**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alice Nevarez,<br><br>  Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>  Defendant. | No. CV-12-2586-PHX-LOA<br><br>**ORDER** |

Plaintiff seeks review of the Social Security Administration Commissioner's decision denying her application for disability insurance benefits and supplemental security income. The parties, who have expressly consented in writing to proceed before the undersigned Magistrate Judge per 28 U.S.C. § 636(c), have filed briefs in accordance with the Rules of Practice ("Local Rules" or "LRCiv") 16.1. (Docs. 22, 26 and 27) After review of the record, briefing and applicable law, the decision of the Commissioner is affirmed.

**I. Procedural Background**

On August 12, 2009, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act. *See* 42 U.S.C. §§ 401-433 and §§ 1381-1383c (AR[1] 21, 177-186)

---

[1] Citations to "AR" are to the administrative record.

Plaintiff was 42 years of age when she filed the applications. (AR 177, 184)  Plaintiff has a high school education. (AR 46) Plaintiff reported in the applications she became disabled on June 1, 2005.[2] (AR 177, 184)  Plaintiff initially identified a pinched nerve in her right arm as the condition that limits her ability to work. (AR 198) At the administrative hearing, Plaintiff testified she is having ongoing problems with her neck, arms, and lower back, including persistent pain. (AR 50-58) She also testified she suffers from depression, though the medication she takes helps with that condition. (AR 59-60)

Plaintiff's applications were denied by the Social Security Administration ("SSA") on November 23, 2009. (AR 116-123)  Her request for reconsideration was denied on April 29, 2010. (AR 125-131)  At Plaintiff's request, doc. 132, a hearing was held on August 1, 2011, before Administrative Law Judge ("ALJ") Thomas Cheffins. (AR 39-79)  In a written decision, dated August 26, 2011, the ALJ ruled Plaintiff is not entitled to disability benefits because she "has not been under a disability within the meaning of the Social Security Act from November 9, 2007, through the date of this decision." (AR 21, 18-33)

Plaintiff filed a Request for Review of Hearing Decision/Order on October 3, 2011. (AR 15-16) On October 24, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-3)  As a result of the denial, the ALJ's decision became the final decision of the SSA Commissioner. (AR 1)

On December 5, 2012, having exhausted the administrative review process, Plaintiff sought judicial review of the Commissioner's decision by filing a Complaint in this District Court pursuant to 42 U.S.C. § 405(g). (Doc. 1)  On May 24, 2013, Plaintiff filed an Opening Brief pursuant to LRCiv 16.1, in which she seeks a remand for an award of disability benefits or, alternatively, a remand for further administrative proceedings. (Doc. 22)  On July 22,

---

[2] At the administrative hearing, Plaintiff amended her disability onset date to November 9, 2007. (AR 43-44)

2013, Defendant filed an Opposition to Plaintiff's Opening Brief. (Doc. 26) Plaintiff filed a Reply Brief on August 8, 2013. (Doc. 27)

**II. Applicable Legal Standards**

**A. Standard of Review**

A district court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reddick*, 157 F.3d at 720. In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." *Reddick*, 157 F.3d at 720-21.

**B. Sequential Evaluation Process**

To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A five step procedure is used to evaluate a disability claim:

> In step one, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the Secretary proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. At step four, the Secretary determines whether the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the Secretary must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 404.1520(f).

*Reddick*, 157 F.3d at 721.

## III. ALJ Decision

Applying the five-step procedure in this case, the ALJ determined Plaintiff has not engaged in substantial gainful activity since November 9, 2007, her alleged disability onset date. (AR 23) The ALJ found Plaintiff has the following "severe" impairments within the meaning of the regulations: right bicep tendonitis, status post cervical fusion, depression, and neck pain. (*Id.*) The ALJ determined, however, Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 24) As a result, the ALJ assessed Plaintiff's residual functional capacity[3] ("RFC"). (AR 25-30) The ALJ determined Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), but with limitations. (AR 25) Specifically, he found Plaintiff "is restricted from ever climbing ladders, ropes or scaffolds, or crawling; only occasionally pushing/pulling with the right upper extremity; occasional overhead reaching with the right upper extremity; frequent handling/fingering/feeling with the right upper extremity; and should avoid

---

[3] The term "residual functional capacity" means the most an individual can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. *See* 20 C.F.R § 404.1545(a)(1-2).

4

concentrated exposure to excessive vibrations and concentrated use of moving machinery." (*Id.*) Additionally, the ALJ found Plaintiff "can perform simple, routine, repetitive tasks, with occasional interaction with public and coworkers." (AR 26)

In addition, the ALJ determined Plaintiff is unable to perform any past relevant work, but found, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (AR 31) Based on these findings, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from November 9, 2007, through the date of the decision. (AR 32) Consequently, the ALJ ruled Plaintiff is not entitled to disability insurance benefits or supplemental security income. (AR 32-33)

**IV. Analysis**

Plaintiff contends in her opening brief the Commissioner's decision should be reversed and the case remanded for an award of benefits. Plaintiff argues the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so supported by substantial evidence in the record. Plaintiff also argues the ALJ, in determining Plaintiff's work-related abilities, erred by relying on opinions from non-examining State agency physicians. In the responsive brief, the Commissioner disputes each of Plaintiff's arguments and contends the administrative decision is supported by substantial evidence and the ALJ applied the proper legal standards.

**A. Discounting of Plaintiff's Symptom Testimony**

As noted above, Plaintiff first argues the ALJ erred by rejecting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence in the record. (Doc. 22 at 13-21)  Plaintiff contends that because the ALJ made no finding of malingering, he may not reject such testimony without satisfying this high standard. The Commissioner argues in response that the ALJ provided legally sufficient reasons for finding Plaintiff's symptom testimony not credible. (Doc. 26 at 10-16)

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*). A claimant need only show that her medically determinable impairment could reasonably be expected to produce some degree of the symptom alleged, not "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if a claimant satisfies this test, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.* "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

Plaintiff testified at the administrative hearing that she has constant, severe pain in her neck, shoulders, arms, and hands. (AR 50-53) She claimed she received no relief from the

6

fusion surgery in her neck in April 2008 and subsequent steroid injections. (AR 54) She also testified she suffers from pain in her lower back. (AR 55-57) As a result, Plaintiff testified it hurts to lie down, to walk and to sit. (AR 57) Plaintiff further testified that even after a lumbar nerve stimulator was implanted in 2010, her lower back has not felt good, and steroid injections provided no relief. (AR 56-57) Plaintiff testified that during normal working hours of an average day, she spends about half the day, or four hours, lying down. (AR 57)

In assessing Plaintiff's credibility, the ALJ found "that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 26) The ALJ then provided several reasons for discounting Plaintiff's symptom testimony. (AR 26-28) After discussing those reasons, the ALJ wrote, "I must conclude, based upon consideration of subjective allegations weighed against the objective medical evidence and other relevant information bearing on the issue of credibility that the [Plaintiff] exaggerates her physical and mental complications and so such subjective allegations must be rejected as lacking credibility." (AR 28)

One of the reasons relied on by the ALJ for discounting Plaintiff's credibility involved evidence of improper drug use and her statements about that issue at the hearing. (AR 27-28) As the ALJ pointed out, Plaintiff's pain management doctor, Brian Page, D.O., stated in his notes from a November 24, 2009 office visit that he had "some major concerns at this point regarding this patient." (AR 650) He explained she cancelled procedures, received medication from other providers, and was not able to provide a urine sample when requested. (*Id.*) His office received notice from a pharmacy review that Plaintiff received pain medication from another provider since Dr. Page saw her last. (*Id.*) Dr. Page added, "She is certainly on probation as far as we are concerned." (*Id.*) In another office visit report, dated August 6, 2009, Dr. Page indicated he discussed an "opiate contract violation" after Plaintiff ran out of pain medication after taking more than was prescribed and then took pain

1  medication from her friend. (AR 326) Plaintiff said she understood the opiate contract
2  violation issue. (*Id.*)

3  In addition, the ALJ referenced a report from an office visit to Desert Bloom Family
4  Medicine on October 4, 2010. (AR 560-562) The report reflects that a urine drug screen
5  showed Plaintiff tested positive for cocaine, though Plaintiff denied any street drug use. (*Id.*
6  at 562)  The same report indicates Plaintiff acknowledged she had a prescription for
7  morphine from another doctor while being prescribed Percocet from Desert Bloom. (*Id.*) The
8  provider at Desert Bloom explained Plaintiff can obtain narcotics from only one provider and
9  Plaintiff must disclose who she is seeing and what she is taking. (*Id.*)  Notably, this discovery
10 by the Desert Bloom provider came less than a year after Dr. Page discovered Plaintiff was
11 receiving medication from other providers, and just over a year after Dr. Page had discussed
12 an opiate contract violation with Plaintiff.

13 The ALJ also cited a hospital record from St. Luke's Medical Center in Phoenix, dated
14 June 1, 2011, in which Manesh Zaveri, D.O., a pain management physician who was treating
15 Plaintiff, expressed concern over another urine drug screen that showed Plaintiff had again
16 tested positive for cocaine. (AR 606)  Plaintiff again denied using cocaine. (*Id.*)

17 At Plaintiff's administrative hearing, Plaintiff's counsel asked Plaintiff if she had used
18 cocaine, after explaining that the medical file showed two lab tests in which she tested
19 positive for cocaine. (AR 61)  Plaintiff testified she had not used cocaine. (*Id.*)  When asked
20 if she could explain the positive tests, she testified that she has a son who is on drugs and,
21 by walking into his room, she must have exposed herself to the illicit drug. (*Id.*)  When the
22 ALJ followed up on that question, Plaintiff said she must have inhaled it when she walked
23 into her son's room. (AR 67)  As the ALJ pointed out, however, Plaintiff told a provider at
24 Desert Bloom on February 16, 2011, that neither of her two sons smoked or abused alcohol
25 or illegal drugs. (AR 543) It should also be noted that when the ALJ asked Plaintiff at the
26 hearing about whether her doctor talked to her about violating the narcotics agreement and
27 receiving morphine from one doctor while receiving Percocet from another, Plaintiff claimed

1   she did not remember. (AR 67)

2   As discussed above, in evaluating a claimant's credibility, an ALJ may rely on
3   ordinary techniques of credibility evaluation, including testimony by the claimant that
4   appears less than candid. *Smolen*, 80 F.3d at 1284. This credibility finding by the ALJ is
5   reasonable in light of Plaintiff's testimony at the hearing explaining her two positive cocaine
6   tests and claim she had no recollection of her discussion with her doctor, Dr. Page, about
7   violating the narcotics agreement appear. Moreover, as the trier of fact who conducted the
8   hearing, the ALJ was in the best position to make the determination whether Plaintiff was
9   credible and truthful. The Plaintiff's statements about, and evidence of, possible illegal drug
10  use, along with what appear to be repeated violations of the narcotics agreement, objectively
11  diminished Plaintiff's credibility.

12  A second reason relied on by the ALJ for discounting Plaintiff's credibility involves
13  inconsistencies between statements Plaintiff made at the administrative hearing about her
14  condition and information in the medical records. For example, when the ALJ questioned
15  Plaintiff about the results of her June 2010 surgery[4] in which a lumbar nerve stimulator was
16  implanted, Plaintiff testified she was doing well for a while but started to go downhill about
17  a month after the surgery. (AR 68)  When the ALJ then questioned Plaintiff about her ability
18  to walk a mile, as Plaintiff had reported she could do[5], Plaintiff testified, "That was before
19  I got worse," suggesting she became unable to walk that distance after the 2010 surgery. (AR
20  68)

21  The medical records pertaining to the surgical implant, however, reflect that on
22  November 30, 2010, more than three months after the permanent stimulator was implanted,

---

24  [4] It appears Plaintiff first had a temporary nerve stimulator implanted in June 2010 and
    then, based on the positive results, a permanent nerve stimulator was implanted in August
25  2010. (AR 643-645)

26  [5] Plaintiff reported in a September 22, 2009 questionnaire regarding daily activities
    dated that she could walk a mile, and reported in a February 16, 2010 questionnaire that she
27  could sometimes walk a mile and a half. (AR 213-215, 239)

9

Plaintiff reported that although she still had right arm discomfort, the stimulator gave her good relief in the painful areas, and that her narcotic use had decreased. (AR 641) The progress note by the surgeon who performed the procedure further indicated that overall, Plaintiff was pleased with the nerve stimulator. (*Id.*)

Based on these records, the ALJ found Plaintiff's testimony that she "got worse" after the implant surgery, and Plaintiff's suggestion that she could no longer walk a mile after the surgery, "not consistent with the medical evidence." (AR 27) Additionally, he found Plaintiff's statement that things "got worse" only a month after the surgery was not consistent with Plaintiff's treating records from more than three months after the surgery. (*Id.*)

As stated earlier, prior inconsistent statements concerning the symptoms is a valid basis to discount a claimant's credibility. *See Smolen*, 80 F.3d at 1284. Here, the ALJ identified Plaintiff's statements at the hearing regarding her condition shortly after the surgery as inconsistent with what she told her own surgeon three months after the surgery. Those inconsistencies suggest Plaintiff, through her hearing testimony, was attempting to make her condition appear more restrictive than it actually was.

Although the ALJ provided several additional reasons for rejecting Plaintiff's symptom testimony, the Court finds the foregoing reasons sufficient to support the ALJ's credibility determination. The Court, therefore, need not address the remaining reasons identified by the ALJ. The reasons discussed here satisfy the clear and convincing standard and are supported by substantial evidence in the record. Accordingly, the Court finds no error in the ALJ's credibility determination.

**B. Reliance on State Agency Physicians**

Plaintiff next contends the ALJ erred by relying on non-examining state agency physicians when determining Plaintiff's work capacity. Plaintiff asserts their opinions alone may not serve as substantial evidence to deny benefits. Plaintiff further claims the physicians' assessments are not properly supported and, as a result, should not have been accorded "greater weight" by the ALJ.

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The opinion of a treating physician is generally entitled to more weight than the opinion of a non-treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2).

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 830-31 (citations omitted) (emphasis in original). When the opinions of non-treating or non-examining physicians, however, "are consistent with independent clinical findings or other evidence in the record," those opinions may serve as substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ first explained there are no opinions in the record from treating or examining medical sources indicating Plaintiff has greater limitations than those found by the ALJ. (AR 30) The ALJ, therefore, gave "greater weight" to the opinions of two non-examining physicians, Ernest Griffith, M.D., and James J. Green, M.D. (AR 30)  Dr. Griffith prepared a Physical Residual Functional Capacity Assessment, dated November 18, 2009. (AR 446-453) Dr. Green prepared a Physical Residual Functional Capacity Assessment on April 26, 2010, as part of the reconsideration process after Plaintiff's applications were initially denied. (AR 91-93, 105-107)

Dr. Griffith opined in his assessment that Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; and is limited in her lower extremities with regard to pushing and pulling. (AR 447)  He stated Plaintiff can never climb a ladder, rope or scaffolds, and that she can never crawl. (AR 448)  He further

1 indicated that Plaintiff can occasionally reach with her right arm and can frequently do
2 handling, fingering, and feeling with her right hand. (Ar 449) He found no visual or
3 communicative limitations. (AR 449-450) The only environmental limitations the ALJ found
4 Plaintiff should avoid were concentrated exposure to vibration and hazards, such as,
5 machinery and heights. (AR 450)

Dr. Griffith explained the basis for the exertional limitations by referencing the cervical diskectomies and fusions performed on Plaintiff in April 2008. (AR 447) He wrote that the procedure provided Plaintiff relief from the pain in her upper right extremity for a few months, but the symptoms returned along with biceps tendonitis. (*Id.*) Examination in February 2009 disclosed full shoulder range of motion with possible signs of tendonitis. (*Id.*) Attempts to determine the basis for recurrent radiating pain into the right upper extremity disclosed no abnormality on a brachial plexus[6] CT, and only slight changes of a "C8/T1 radiculopathy"[7] on the right side. (*Id.*) A cervical spine MRI was unchanged from earlier ones. Epidurals did not improve Plaintiff's symptoms and examinations showed no hard positive neurological signs of impairment in her upper extremities. (*Id.*) Finally, on the last page, Dr. Griffith wrote that Plaintiff's complaints seem to exceed the objective findings. (AR 451)

Dr. Green's assessment contained essentially the same limitations as Dr. Griffith's assessment with only slight differences. For example, Dr. Green found no crawling restrictions even though Dr. Griffith determined Plaintiff should never crawl. (AR 92, 448)

---

[6] "Brachial plexus" is a complex network of nerves that is formed chiefly by the lower four cervical nerves and the first thoracic nerve, lies partly within the axilla (armpit), and supplies nerves to the chest, shoulder and arms. *Merriam-Webster Online Dictionary,* http://www.merriam-webster.com (last visited March 20, 2014).

[7] "Radiculopathy" means irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root. *Merriam-Webster Online Dictionary,* http://www.merriam-webster.com (last visited March 20, 2014).

With respect to the limitations regarding Plaintiff's ability to lift, carry, stand, walk and sit, the two assessments were the same. (AR 91-93; 105-107; 446-453) At the end of his assessment, Dr. Green provided the following explanation:

> After a review of the medical records, the initial light RFC [assessment of Dr. Griffith] is hereby affirmed. This 42 [year old] female had cervical diskectomies from C5 to C7 in [April] 2008. She has right proximal upper extremity pain, of unknown etiology. There isn't evidence for radiculopathy. Pain has been labeled as tendonitis.

(AR 93, 107)

The ALJ gave weight to Dr. Griffith's and Dr. Green's assessments because they were "not inconsistent with the greater objective record, particularly regarding the finding that the claimant has no significant limitations precluding all work, even taking into account the problems with her right shoulder/arm, neck, back, and depression." (AR 30) The ALJ found the doctors "provided specific reasons for their opinions about [Plaintiff's] functional limitations." (*Id*) The ALJ further stated the "opinions consistently opined that the claimant would have the capacity to perform a range of light exertional work, with right extremity overhead reaching restrictions and limited to simple work, and [were] soundly based on the objective findings, progress notes and treating notes." (*Id*) Finally, the ALJ found the doctors' opinions were consistent with the overall medical evidence of record. (*Id.*)

Plaintiff claims there are two problems with the ALJ's reliance on the opinions of Drs. Griffith and Green. First, Plaintiff asserts the ALJ may not rely on these opinions alone to provide the substantial evidence upon which the ALJ's decision was based to deny benefits. The ALJ's decision, however, clearly establishes that the ALJ was not relying solely on these opinions to support his conclusion that Plaintiff is not disabled. The ALJ expressly noted that his determination was based on several factors, including the medical treating and progress notes, the objective clinical findings, the psychological evaluator's assessment, the assessments of Drs. Griffith and Green, and Plaintiff's activities, all of which he discussed in his decision. (AR 30) The Court finds the ALJ properly relied on other substantial evidence to support his decision in addition to the assessments of Drs. Griffith and Green.

Plaintiff's second claim of improper reliance on the State agency physicians' opinions is based on Plaintiff's contention that these opinions are not properly supported. Plaintiff claims Dr. Griffith's assessment contains "no explanation other than 'Complaints seem to exceed objective findings.'" (Doc. 22 at 22) Plaintiff, however, is mistaken. As discussed above, Dr. Griffith explained that the medical evidence he relied upon to arrive at the exertional limitations set forth in his assessment. (AR 447) He addressed Plaintiff's fusion and diskectomy surgery in April 2008 and how subsequent tests failed to show a basis for Plaintiff's recurring radiating pain in her right upper extremity. (AR 447) It appears Plaintiff may have simply failed to see Dr. Griffith's explanation for the limitations set forth in his assessment.

Likewise, as discussed above, Dr. Green's assessment contained an explanation to support his RFC assessment, again referencing Plaintiff's 2008 surgery and subsequent pain of unknown etiology in the right upper extremity. (AR 93, 107) He explained there is no evidence of radiculopathy and the pain has been identified as tendonitis. (*Id.*)

The Court finds the assessments of Drs. Griffith and Green are sufficiently supported by reference to relevant medical evidence in the record. Accordingly, the Court finds no error in the ALJ's reliance on these assessments to support his RFC determination.

## V. Conclusion

Based on the foregoing analysis, the Court finds the Commissioner's decision is supported by substantial evidence and free from harmful legal error.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is kindly directed to enter judgment in favor of the Commissioner and terminate this appeal.

Dated this 24th day of March, 2014.

Lawrence O. Anderson
United States Magistrate Judge